**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**STANLEY DEMERE,**

      **Petitioner,**

**v.**                              **Case No. 2:09cv83**
                                             **Judge Bailey**

**WARDEN DAVID BALLARD,**

      **Respondent.**

## REPORT AND RECOMMENDATION

### I.   Factual and Procedural Background

On July 22, 2009, the *pro se* petitioner initiated this action pursuant to 28 U.S.C. § 2254. Following preliminary review and an Order directing an answer, the respondent filed a Motion to Dismiss the petition for failure to exhaust state court remedies. In response to a <u>Roseboro</u> Notice, the petitioner filed a Motion to hold his petition in abeyance pending his efforts to exhaust all of the claims raised in his federal petition. On January 8, 2010, the undersigned issued a Show Cause Order to the respondent, to show cause why the petitioner's Motion for Abeyance should not be granted. No response was filed. Accordingly, on January 29, 2010, an Order was entered granting the petitioner's Motion for Abeyance. The order also directed the Clerk to place this matter on the Court's inactive docket and directed the petitioner to move for reinstatement within thirty days from the date he exhausted his state court remedies.  By Order entered October 4, 2010, the January 29, 2010 order was modified, reopening the case but continuing to hold in abeyance Grounds Four through Eight, and staying the case in its entirety pending the petitioner's attempt to present his unexhausted federal claims to the courts of West Virginia. The petitioner was directed to provide the court and the respondent with status updates of the progress of the state court proceedings at least every three months.

On December 14, 2011, petitioner filed a Motion to Waive Exhaustion under 28 U.S.C. §2254(b)(B)(1) and 28 U.S.C. §2254(b)(B)(ii). The respondent was directed to file a response. On January 4, 2012, the respondent filed his Response in Opposition. The undersigned issued a Report and Recommendation ("R&R") on April 16, 2012, recommending that petitioner's motion be denied as moot. Neither party objected, and by Order entered May 9, 2012, the district judge adopted the R&R, denying petitioner's motion as moot. On March 25, 2013, petitioner filed a motion to lift the stay and reinstate the case to the active docket, styled as Notice of Exhaustion of State Remedies. By Order entered April 9, 2013, petitioner's motion was granted, the Clerk was directed to reinstate the case to the active docket, respondent was directed to file its response to petitioner's recently exhausted claims, and petitioner was directed to reply; the parties were advised that no extensions of time would be granted. On April 10, 2013, that Order was amended to direct the respondent to file an answer to all of petitioner's claims in the petition; the advisement regarding extensions of time was repeated.

On May 10, 2013, the respondent filed its Answer, as well as a Motion for Summary Judgment and Renewed Motion to Dismiss, with a memorandum in support. On June 5, 2013, the petitioner filed a response in opposition to respondent's Motion for Summary Judgment and Renewed Motion to Dismiss, containing within it, a motion for an enlargement of time in which to respond to the respondent's Motion for Summary Judgment. By Order entered the same day, petitioner's motion for an enlargement of time was denied.

Accordingly, this case is before the undersigned for a report and recommendation pursuant to LR PL P 2.

## I. Factual and Procedural Background

## A. Petitioner's Conviction and Sentence

On June 5, 2005, petitioner, then 73 years old, was indicted on one count of premeditated murder by the Grand Jury of Pendleton County, West Virginia, arising out of the killing of his 51-year old estranged wife, Bonnie Demere, with whom he was then embroiled in bitter divorce proceedings. On December 8, 2004, Bonnie Demere was alone at her job, cleaning house for a local physician, Dr. Sebastian, when she was shot three times, once through the left breast, once through the chest and lung, and once through the forehead at close range, while the shooter stood above her and she crawled on the floor, apparently attempting to escape. After a 3-day jury trial, on January 12, 2006, petitioner was convicted of murder in the first degree without a recommendation of mercy. On February 9, 2006, he was sentenced to life without parole.

## B. **Direct Appeal**

On August 29, 2006, through counsel, petitioner filed his petition for appeal, raising these assignments of error:

**(1)** The State Circuit Court committed error and violated the Defendant's constitutional right to present a complete defense, grounded in the Due Process, Confrontation, and Compulsory Process Clauses of the United States Constitution, in holding the Defendant's evidence of third-party guilt was inadmissible.

**(2)** The State Circuit Court erred in denying the Defendant's Motion for Acquittal made at the conclusion of the State's evidence and at the conclusion of all the evidence, since the State, as a matter of law, did not prove the Defendant guilty of first degree murder beyond a reasonable doubt.

**(3)** The State Circuit Court erred in denying the Defendant's motion to exclude from evidence the two guns owned by Stanley Demere, which the State could not prove were murder weapons.

**(4)** The State Circuit Court erred in allowing the State to introduce into evidence State Exhibits Nos. P31 through P35, pictures of the body of Bonnie Demere. The pictures were introduced over Defendant's objections, since the same were gruesome and unnecessary, in view of the Defendant's willingness to stipulate that Bonnie Demere was killed and murdered, the sole issue for trial being who had committed the murder.

**(5)** The State Circuit Court erred in not granting the Defendant's discovery request that the State be required to furnish the Defendant with the questions, answers and notes of the polygraph examiner, for the lie detector test given to Billy L. Sites by the State.

**(6)** The State Circuit Court erred in allowing the State to introduce into evidence the oral statement Defendant allegedly made to Tpr. A.D. Teter, when Teter first contacted Defendant by phone after the murder, that he had not talked to Bonnie Demere the day of her murder, and by not directing the jury to totally disregard the statement. (Dkt.# 17-4 at 23 – 24)

The WVSCA refused the petition by Order dated April 3, 2007.[1] (Dkt.# 17-4 at 3).

## C. Petitioner's First State Habeas Petition

On June 15, 2007, petitioner filed a *pro se* state habeas petition in the Circuit Court of Pendleton County, West Virginia. Upon initial review, the Court determined that petitioner might have grounds for relief and appointed counsel. On May 19, 2008, through counsel, petitioner filed an Amended Petition for Writ of Habeas Corpus. Thereafter, on July 12, 2008, through counsel, he filed a Second Supplemental Petition, advancing eleven grounds for relief:

**(1)** The trial court erred when it failed to *sua sponte* bifurcate the trial, to afford Petitioner a separate hearing by the jury on the issue of whether to grant mercy.

**(2)** Trial counsel was ineffective for failing to:

> **a)** move for a bifurcation of trial so that there would be a separate hearing on the issue of whether the jury would grant mercy;
>
> **b)** address the issue of mercy;
>
> **c)** object to the State's introduction of a statement made by the Petitioner's son, Stanley Irvin Demere, when the State did not call Stanley Irvin Demere as a witness; and
>
> **d)** failing to request that the Court perform a balancing test pursuant to Rule 403 of the West Virginia Rules of Evidence in order to balance the probative value against the prejudicial impact of certain statements made by the Petitioner.

---

[1] The WVSAC's twelve-page Order, without addressing the specific merits of petitioner's appeal or its reason for refusing review, discussed West Virginia's discretionary appeal system, and whether it should adopt a policy of always granting petitions for appeal in cases where a defendant received a life sentence without the possibility of parole, to ensure that a fair trial was received. It concluded that the state's policy of discretionary review was constitutional and it would be unfair to carve out a special review policy for only a certain class of litigants.

**e)** Trial counsel erred by calling Ruthlene Hinkle as a witness.

**f)** Trial counsel erred by not attempting to show that Billy Sites had more opportunity to commit the murder before he went to Harrisonburg, rather than after.

**g)** Trial counsel erred by allowing George Isaac Sponaugle, III, to make the closing argument, rather than George Isaac Sponaugle, II; and

**h)** failed to adequately address the issue of admission into evidence of the two guns owned by the Petitioner.

**(3)** The trial court erred in holding the Petitioner's alleged evidence of third party guilt was inadmissible.

**(4)** The trial court erred when it denied Petitioner's motion for acquittal, made at the conclusion of the state's evidence and at the conclusion of all of the evidence presented in the case.

**(5)** The trial court erred when it denied Petitioner's motion to exclude from evidence the two guns he owned.

**(6)** The trial court erred by allowing the State to introduce into evidence the photographs of the decedent's body and the crime scene.

**(7)** The trial court erred when it denied Petitioner's discovery request that the State be required to furnish to the Petitioner the polygraph questions; answers given in response to those questions; and the notes of the polygraph examiner, for the lie detector test given to Billy Sites by the State.

**(8)** The trial court erred when it failed to direct the jury to disregard a verbal statement made by the Petitioner to Trooper A.D. Teeter on the evening of the murder.

**(9)** The trial court erred in permitting the State to make impermissible reference to the Petitioner's failure to testify.

**(10)** The trial court erred when it denied Petitioner a fair and impartial jury trial, based on the cumulative effect of the numerous errors committed at trial.

**(11)** The West Virginia Supreme Court erred by refusing to grant full appellate review of the Petitioner's direct appeal.[2]

---

[2] See State ex rel. Demere v. Ballard, (Cir. Ct. Pendleton County, W.Va. Dkt.# ___)(CA No. 07-C-13), Amended Petition, Supplemental Petition, and Second Supplemental Petition, *passim.*

The matter was fully briefed and a hearing on the Respondent's motion to dismiss was held July 29, 2008. By Order entered September 18, 2008, the Circuit Court of Pendleton County concluded that all of Petitioner's grounds lacked merit and could be ruled on as a matter of law, since they had been previously raised on direct appeal, except for the sole issue of whether the issue of mercy should have been bifurcated. The court addressed the merits of the claims previously determined to be sufficiently developed and did a partial dismissal of the petition, by Order entered September 18, 2008. On the bifurcation issue, the court granted an omnibus habeas evidentiary hearing, which was held on October 29, 2008. Petitioner appeared with counsel. The Court heard testimony from Petitioner's trial counsel, George I. Sponaugle II and George I. Sponaugle, III, and from attorney Gregory Campbell, recognized by the Court as an expert witness. By Order entered on November 25, 2008, petitioner's request for habeas corpus relief was denied.

On May 4, 2009, through counsel, petitioner filed a petition to appeal the denial of his first state habeas petition with the West Virginia Supreme Court of Appeals ("WVSCA"), raising these issues:

**(1)** The trial court erred when it failed to find that trial counsel failed to provide effective assistance of counsel for:

> **a)** failing to investigate the issue of mercy and present an argument on it to the jury;
>
> **b)** by failing to object to the State's introduction of a statement made by petitioner's son, Stanley Irvin Demere, when the State did not call him as a witness;
>
> **c)** failing to request the trial court perform a W.Va. R. Evid. 403 balancing test to balance the probative value against the prejudicial impact of statements made by petitioner, such as that he was "glad the bitch is dead;"
>
> **d)** for calling Ruthlene Hinkle as a witness;

**e)** for not attempting to show that Bill Sites had more opportunity to commit the murder before he traveled to Harrisonburg rather than after he returned;

**f)** for allowing George I. Sponaugle, III, to make the final closing argument instead of George I. Sponaugle, II; and

**g)** for failing to adequately address the issue of admission of two guns owned by petitioner, neither of which the State could prove were the murder weapon.

**(2)** The trial court erred when it refused to permit an evidentiary hearing in the lower habeas corpus proceeding as to any issues other than the issue of mercy.

**(3)** The trial court erred when it refused to allow Petitioner to introduce evidence to show that another individual had the motive and opportunity to commit the crime.

**(4)** The trial court erred when it allowed the State to introduce the hearsay testimony of [his son] Stanley Irvin Demere at trial in its case in chief.

**(5)** The trial court erred when it refused to provide Petitioner with the results of Billy Sites' polygraph examination.

**(6)** The trial court erred when it failed to find that in his final argument, the prosecuting attorney commented on Petitioner's failure to testify.

**(7)** The trial court erred when it found that the West Virginia Supreme Court of Appeals' refusal to grant Petitioner's original appeal was a "discussion on the merits," thereby precluding Petitioner's right to file a habeas corpus petition.

**(8)** The West Virginia Supreme Court of Appeals' decision to refuse to grant an appeal and reverse Petitioner's conviction was plainly wrong.[3]

By Order entered June 3, 2009, the WVSCA refused the petition for appeal.[4]

### D.  **Petitioner's Federal Habeas Petition (Dkt.# 1)**

On July 22, 2009, Petitioner filed the instant *pro se* petition for federal habeas relief

pursuant to 28 U.S.C. §2254, raising the following claims, reworded here for clarity:

**(1)** The Petitioner's first degree murder conviction was obtained as a direct result of counsels'[5] ineffectiveness at trial, in violation of Petitioner's right to effective assistance of

---

[3] Dkt.# 17-9 at 13.

[4] Dkt.# 17-9 at 2.

counsel as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and <u>Strickland v. Washington</u>, 66 U.S. 668 (1984). Petitioner contends that counsels' trial performance was ineffective, because

> **a)** counsel failed to call a witness would could have provided more information with the actual correct time of the victim's death based, on the flawed time of death estimate provided by the State's Chief Medical Examiner, Dr. Sabet, and the Pendleton County Medical Examiner, Joseph Benkert.

> **b)** Counsel argued that various parts of the prosecution's evidence was inadmissible [sic] under W.Va. Rule of Evidence 404(B).[6]

> **c)** "[C]ounsel was deficient in arguing against [sic] the admissibility of the two guns alleged to [both] be and not to be the murder weapons . . . caus[ing] the jury to guess and speculate as to which gun could have or might have been the murder weapon[.]"[7]

> **d)** Counsel failed to move the trial court to inspect the crime [scene], which might have led to the discovery of exculpatory evidence, or a determination of fingerprint evidence, even though the crime scene investigators claimed no fingerprints were found on the door and window where petitioner's prints should have been found.

> **e)** Counsel failed to reasonably investigate the case.

> **f)** Counsel failed to move for investigation and testing of the .22 caliber gun found in Bill Sites' truck, to determine whether the firearm was the murder weapon, given that the victim was shot with a .22 caliber firearm.

> **g)** Counsel failed to seek or move the trial court for independent review of the State's autopsy report to proffer a more accurate estimate of the time of death, because of the flawed estimate presented by the state.

> **h)** Counsel failed to present more alibi witnesses and evidence.

> **i)** Counsel failed to object to improper remarks and statements by the Pendleton County Prosecutor, Jerry Moore.

> **j)** Counsel failed to adequately impeach or rebut the State's evidence concerning the estimated time of death, or present defense witnesses concerning the evidence.

---

[5] At trial and on appeal, petitioner was represented by two attorneys, George I. Sponaugle, II and George I. Sponaugle, III.

[6] Nowhere in his §2254 petition does petitioner explain which parts of the State's evidence his counsel was deficient for arguing was inadmissible.

[7] Nowhere in his §2254 petition does petitioner clarify this claim.

**k)** Counsel failed to properly advise and instruct petitioner of his right to file a motion to bifurcate the trial before trial commenced, preventing petitioner from being able to seek mercy, if the jury returned a first-degree guilty verdict.

**(2)** Petitioner's Fourteenth Amendment right to due process, his Sixth Amendment right to confront witnesses and the Supreme Court's holding in <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), were violated when the Pendleton County Circuit Court denied him the opportunity to present a complete defense, by holding that his evidence of third party guilt was inadmissible.

**(3)** The State court committed reversible error when it denied Petitioner's defense motion for acquittal, made at the conclusion of the State's evidence and at the conclusion of all the evidence, since the State, as a matter of law, did not prove his guilt of first degree murder beyond a reasonable doubt. Petitioner contends that the prosecutor did not prove he was guilty of the crime beyond a reasonable doubt, because

**a)** petitioner supposedly told some unknown party that the best way to kill someone was "two shots in the chest and one in the head." However, at trial, no testimony from any witness attested to this.

**b)** Petitioner allegedly told Pendleton County Deputy Bower that he would shoot him if he came to get his guns; petitioner denies this, contending that no one even mentioned taking his guns on the date in question, and even if they had, he would not have made a threatening statement, yet the prosecutor stated it as fact to jury.

**c)** Petitioner contends the prosecutor told the police he claimed he was seeking reconciliation with his estranged wife when he went to see her at Dr. Sebastian's house. Petitioner avers his statement to the police was that he went to Sebastian's place on the morning of the murder "to seek an amicable resolution to the dog [custody] issue, which was worked out." Thus, the prosecutor stated facts not in evidence.

**d)** The State said petitioner's son's testimony was not credible, even though his statement to the police was admitted into evidence and proven credible.

**e)** Petitioner's expert witness testified that the bullets could have come from millions of guns, but two guns which were "not ruled in or out of evidence were in plain view of the Jury, including two-shot derringer, even though" the victim was shot three times.

**f)** The State's evidence against Petitioner was all circumstantial and included:

**i)** petitioner's December 8, 2004 statement to police where he denied killing Bonnie Demere;

**ii)** a November 19, 2004 incident between petitioner and the victim regarding a disagreement over custody of their dogs; the sheriff did not apparently think it merited anything other than a call to petitioner and a witness present at the incident, Ruthlene Hinkle, did not think she and Bonnie were in danger;

**iii)** two of petitioner's guns that could not be proven by forensic analysis to be the murder weapon;

**iv)** the State's own expert who testified as to the results of analysis of GSR found on petitioner opined that how long GSR stays on a person depends on their activity; petitioner told police he had been target shooting day before the murder; and

**v)** Dr. Zia Sabet, the State medical examiner, based his estimate of the time of death on rigor mortis information received from the Pendleton County Medical Examiner, who, according to Sabet's testimony, "clearly had no understanding, or the wrong understanding, of rigor mortis. Therefore, the time of death estimate was flawed, especially in view of witnesses Larry Joe and Gladys Meadows' testimony that they had seen Bonnie alive and well between 9 - 9:30 am at their home, 20 - 23 minutes away from the crime scene.

**(4)** The State court violated Petitioner's rights to due process, equal protection of the law, and a fair trial when it denied his defense motion to exclude from evidence two guns owned by Petitioner, which the State could not prove were the murder weapons.

**(5)** The Petitioner's rights to a fair trial and due process of law were violated when the State court allowed the State to introduce into evidence gruesome photographs of the decedent's body, marked as State exhibit numbers P-31 through P-35.

**(6)** The State of West Virginia violated the West Virginia Rules[8] [sic] and the fundamental requirements of <u>Brady v. Maryland</u>[9] and <u>Napue v. Illinois</u>,[10] by withholding exculpatory information from the Petitioner, when it refused to grant his defense discovery request that the State be required to furnish his defense counsel with the questions, answers, and notes of the polygraph examiner, for the lie detector test given to Billy L. Sites by the State, thereby violating the Petitioner's Fifth, Sixth and Fourteenth Amendment to due process of law.

**(7)** At trial, the State Circuit Court committed reversible error when it allowed the State to introduce into evidence the verbal statement Petitioner allegedly initially made, when first contacted by telephone by West Virginia State Police Trooper A.D. Teter, to the effect that he

---

[8] Petitioner appears to be referring to the West Virginia Rules of Criminal Procedure.

[9] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

[10] <u>Napue v. Illinois</u>, 360 U.S. 264 (1959).

had not talked to the decedent Bonnie Demere on the day of her murder, and when it did not direct the jury to totally disregard the statement.

**(8)** The State Circuit Court committed reversible error when it denied him a fair and impartial trial, based on the cumulative effect of numerous errors. Petitioner argues that because the many errors that occurred at trial prevented him from receiving a fair trial, his conviction and sentence should be set aside. Petitioner identifies those alleged errors as:

> **a)** the erroneous admission of prior bad act evidence of alleged threats in violation of W.Va. Rule of Evidence 404(b);
>
> **b)** the failure to grant petitioner a bifurcated trial;
>
> **c)** the failure to maintain the integrity of the jury panel;
>
> **d)** the denial of defense challenges to various jurors;
>
> **e)** the erroneous admission of hearsay evidence;
>
> **f)** the erroneous admission of gruesome photos of the victim;
>
> **g)** the improper comments by the prosecutor in presence of jury, throughout the trial and during closing argument;
>
> **h)** the failure to give jury instruction on circumstantial evidence**;** and
>
> **i)** the failure to grant petitioner's post-trial defense motion for a new trial.

**(9)** The WVSCA erred when it refused to grant full appellate review of Petitioner's direct appeal, violating his Fourteenth Amendment due process rights, his rights as guaranteed by the "Fourteenth Amendment of the West Virginia Constitution [sic]," and the Supreme Court's holding in <u>Evitts v. Lucey</u>, 469 U.S. 378, 405 (1985).

As relief, petitioner requests that his conviction be reversed and that he be granted a new trial.

### E. <u>Respondent's Motion for Summary Judgment and Memorandum in Support (Dkt.# 14 and 15</u>)

The respondent argues that:

**1)** the petitioner's habeas corpus petition must be dismissed for failure to exhaust state court remedies for five of the eight claims raised;

**2)** Grounds Four through Seven were not raised as federal claims in State court;

**3)** Ground Eight was never raised; and

**4)** Ground Nine cannot be exhausted, because there is no constitutional right to post-conviction review.

**5)** Petitioner has filed a "mixed petition,"[11] requiring the entire petition to be dismissed. Alternatively, because petitioner is procedurally barred from returning to State court, he must sever the unexhausted claims, or, in the absence of an available State corrective process, he must demonstrate cause and prejudice for the default.

## F. **Petitioner's Second State Habeas Corpus Petition**

On March 23, 2010, petitioner filed a *pro se* second petition for habeas corpus relief in the Circuit Court of Pendleton County, originally raising four claims, reorganized and reworded here for brevity and clarity:

**1)** The Circuit Court of Pendleton County, West Virginia, denied petitioner a fair and impartial jury trial and due process of law as secured by the Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States of America when the Court denied the defense motion to exclude the State's evidence that the defendant owned two guns which the State could not prove were the alleged murder weapon.

**2)** Petitioner was denied his Sixth Amendment constitutional right to a fair and impartial jury trial and to due process of law as secured by the Fifth and Fourteenth Amendments to the U.S. Constitution and his constitutional right to a fundamentally fair sentencing proceeding as guaranteed by the Eight and Fourteenth Amendments, when the Circuit Court of Pendleton County, West Virginia introduced into evidence the gruesome photographs of the decedent's body.

**3)** Petitioner was denied his federal constitutional right to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution when the 1) defense requested suppressed material; 2) the prosecution suppressed the evidence, and 3) the suppressed evidence was material to guilt or punishment.[12]

**4)** Petitioner was denied the meaningful and effective assistance of counsel when trial counsel, appellate counsel, and habeas counsel failed to vindicate petitioner's federal constitutional rights as guaranteed by the First, Fifth, Sixth, Eighth and Fourteenth Amendments

---

[11] A "mixed petition" is one that contains both exhausted and unexhausted claims.

[12] Here, petitioner is referring to the defense request for Bill Sites' polygraph results, questions and answers and the trial court's refusal to let Sites and the witnesses who would testify in support of petitioner's theory of Sites' third party guilt to testify in the jury's presence, but only vouch the record.

to the Constitution of the U.S.A.  "Collectively," counsel failed to identify controlling federal law when presenting these issues to the state courts:

> **a)** the trial court's denial of the defense motion to exclude two of petitioner's guns from evidence, when neither gun could be proved to be the murder weapon, in violation of petitioner's Fifth, Eighth and Fourteenth Amendment rights;

> **b)** gruesome photos of the victim were admitted into evidence in violation of petitioner's Fifth, Sixth, Eighth and Fourteenth Amendment rights to a fair trial and due process;

> **c)** petitioner was denied his Fifth and Fourteenth Amendment due process rights when the 1) defense requested suppressed material; 2) the prosecution suppressed the evidence, and 3) the suppressed evidence was material to guilt or punishment.[13]

On June 28, 2010, petitioner, through appointed counsel, filed an amended second petition for habeas corpus relief, in the Circuit Court of Pendleton County, raising only one ground for relief:

5) prior habeas counsel, attorney Lary Garret, was ineffective for failing to specifically allege violations of Petitioner's federal constitutional rights in connection with Grounds One, Two, and Three.

On October 12, 2010, the Circuit Court denied petitioner's amended second petition for habeas corpus relief, considering only the claim that prior habeas counsel, attorney Lary Garret was ineffective for failing to specifically allege violations of Petitioner's federal constitutional rights in connection with Grounds One, Two, and Three.  The Circuit Court specifically found that original habeas counsel Attorney Garret did present state and federal authority for the various grounds alleged in petitioner's second habeas petition; original habeas counsel's performance was not deficient; and while acknowledging that although its prior Order did not specify that "a federal and/or state right was presented and decided," held that it had carefully

---

[13] Here, petitioner is again referring to the defense request for Bill Sites' polygraph results, questions and answers and the trial court's refusal to let Sites and the witnesses who would testify in support of petitioner's theory of Sites' third party guilt to testify in the jury's presence, but only vouch the record.

considered all the pleadings and entire record, and that if a federal right was presented, then the Court did consider the federal issues in arriving at its decision.

Petitioner appealed the Pendleton County Circuit Court's decision on his amended second habeas corpus petition to the WVSCA on May 10, 2012, raising these claims:

**(1)** The Circuit Court erred in denying petitioner's allegations of ineffective assistance ("IAC") of prior habeas counsel for failure to raise federal constitutional issues in the prior habeas corpus proceeding. Petitioner alleges that his prior habeas counsel was deficient for failing to raise the following issues:

**a)** petitioner was denied a fair and impartial jury trial and due process of law as required by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution when the trial court denied the defense motion to exclude evidence presented by the State that the defendant owned two guns, neither of which could be proven to be the murder weapon;

**b)** petitioner was denied his constitutional rights to a fair and impartial jury trial, and his right to due process as secured by the Sixth, Fifth, and Fourteenth Amendments to the United States Constitution; and

**c)** petitioner was also denied his right to a fundamentally fair sentencing proceeding as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution, when the Circuit Court of Pendleton County introduced gruesome photographs of the victim's body.

**d)** Petitioner was denied his Fifth and Fourteenth Amendment right to due process of law when:

**i)** the defense requested suppressed material in the form of the results of Billy Sites' polygraph examination;

**ii)** the Court wrongfully suppressed the evidence; and

**iii)** the evidence was material to the guilt or punishment of the petitioner.

**(2)** Petitioner believes that prior habeas counsel, although he did raise these issues in the prior habeas petition, did not specifically allege violations of petitioner's FEDERAL Constitutional rights. As a result, the Orders denying petitioner's prior petition entered by the Circuit Court of Pendleton County failed to address whether any of petitioner's FEDERAL rights were violated at trial or in any prior proceeding.

By Memorandum Decision entered on March 12, 2013, the WVSCA found no error in the Circuit Court's decision, specifically finding that the Circuit Court considered federal issues

in making its first habeas ruling, and affirming the Circuit Court's denial of petitioner's second amended state habeas corpus petition. (Dkt.# 59-5).

## G. Respondent's Motion for Summary Judgment and Renewed Motion to Dismiss

In its motion for summary judgment and renewed motion to dismiss, respondent argues that because petitioner failed to appeal the grounds in support of his second state habeas petition to the West Virginia Supreme Court of Appeals, Grounds Four through Eight of his instant federal habeas petition are still unexhausted and are now procedurally barred from review. Declining to specifically address the merits of petitioner's remaining claims because all claims were not exhausted, respondent noted that they either failed to raise cognizable federal issues or lacked merit.

## H. Petitioner's Response

In response, the petitioner cites to holdings from other jurisdictions in support of his argument that in filing a motion for summary judgment, respondent failed to comply with Rule 4 of Rules Governing Section 2254 Cases. He appears to impliedly assert that the respondent failed to file an answer,[14] and contends that respondent's renewed motion to dismiss is "redundant." Petitioner appears to be arguing that if his claims did not have merit, then the Court would not have ordered the respondent to file an answer in the first place.[15] Petitioner provides no response to any of respondent's substantive arguments, including respondent's argument that he still has not exhausted all of his habeas claims. He merely avers that the

---

[14] The respondent did file an answer (Dkt.# 58) along with its Motion for Summary Judgment and Renewed Motion to Dismiss (Dkt.# 59).

[15] This argument is without merit. In its Order to Show Cause, the Court merely determined summary dismissal was not appropriate at that time and directed the Respondent to file a response to the petition. Such an Order makes no findings as to whether or not the underlying claims actually have merit. A merits determination can only be made after proper response and reply.

respondent's renewed motion to dismiss should be denied, and requests a "reasonable enlargement of time in which to address" the motion for summary judgment.

## II. <u>Standard of Review</u>

### A. <u>Motion to Dismiss</u>

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. <u>Mylan Labs, Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir.1993); see also <u>Martin</u>, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46. In <u>Twombly</u>, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Conley</u>, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," <u>Id</u>. (citations omitted), to one that is "plausible on its

face," Id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Motion for Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary

judgment. <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." (<u>Id</u>.) "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Felty v. Graves-Humphreys Co</u>., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. <u>Anderson</u>, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Industrial Co. V. Zenith Radio Corp</u>., 475 U.S. 574, 587-88 1986).

## III. <u>Analysis</u>

### <u>Exhaustion of State Remedies</u>

A petition for a writ of habeas corpus is not a substitute for pursuing state judicial remedies. See 28 U.S.C. §2254(b). Absent a valid excuse, a petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies. <u>Castille v. Peoples</u>, 489 U.S. 346, 349, *reh'g denied,* 490 U.S. 1076 (1989). To exhaust state remedies, a habeas petitioner must fairly present the substance of his claim to the state's highest court. <u>Matthews v. Evatt</u>, 105 F.3d 907 (4th Cir. 1997), cert. denied, 522 U.S. 833 (1997). "A claim is fairly presented when the petitioner presented to the state courts the substance of his federal habeas corpus claim. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." <u>Id</u>. at 911. "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief . . . by citing in conjunction with the claim the federal source of law on which he relies or a case

deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. 27, 32 (2004); see also Howell v. Mississippi, 543 U.S. 440, 444 (2005).

In West Virginia, the exhaustion of state remedies is accomplished by a petitioner raising the federal issue on direct appeal from his conviction or in a post-conviction state habeas corpus proceeding followed by an appeal to the West Virginia Supreme Court of Appeals. See Moore v. Kirby, 879 F.Supp. 592, 593 (S.D. W.Va. 1995); see also Bayerle v. Godwin, 825 F.Supp. 113, 114 (N.D. W.Va. 1993). A federal court may only consider those issues the petitioner presented to state court,[16] and "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. §2254(c).

In addition, it is petitioner's burden to demonstrate that he has exhausted his state judicial remedies. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998), *cert. denied,* 523 U.S. 371 (1998). "The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition." Id. "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Duncan v. Henry, 513 U.S. 364, 365 (1995). Further, in addition to providing the state court with the facts supporting the claimed constitutional violation, the petitioner must also "explain how those alleged events establish a violation of his constitutional rights." Mallory v. Smith, 27 F.3d 991, 994 (4th Cir. 1994). Finally, a petitioner must show that the claims he raised in the state proceedings are the exact same claims he is raising in a federal

---

[16] Picard v. Connor, 404 U.S. 270 (1971).

habeas petition.  See Pitchess v. Davis, 421 U.S. 482, 487 (1975); see also Picard v. O'Connor, 404 U.S. 270, 275 – 76 (1971).  "It is not enough that all the facts necessary to support the federal claims were before the state courts, or that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 6 (1982)(internal citations omitted).  Not only must the claim itself be the same, but the same factual grounds must be raised in support of the claims in state court as in federal court, and a specific federal constitutional claim must be raised in the state proceedings. (Id.)

Here, petitioner has filed a direct appeal, two state petitions for writ of habeas corpus, and has appealed the denials of both state habeas petitions.  However, after a review of each of those proceedings and the instant petition, the undersigned has determined that only one of the petitioner's claims is exhausted, Ground Two, a claim petitioner raised on direct appeal, in his first state habeas and again on appeal of that state habeas petition.  Most of the claims raised in petitioner's instant federal habeas petition were never raised before the WVSCA in the form he now raises them; some were never raised at all; therefore, they are not exhausted, because petitioner still has a remedy available in State Court for them.  More specifically, the undersigned makes the following findings with regard to each of petitioner's individual claims:[17]

- **Ground One** (ineffective assistance of counsel) ("IAC")) against *trial counsel* was not raised on direct appeal, but was raised in petitioner's first state habeas petition (as #2) and its appeal to the WVSCA (as #1).  However, in petitioner's first state habeas petition, he raised 8 separate claims of IAC, only 7 of which he

---

[17] The undersigned would add a caveat at this point.  All of petitioner's filings in this case, both in state and federal court, are voluminous and at times confusing, because petitioner repeatedly raises similar, but not identical, claims, often with duplicative or redundant subparts, abandoning some and raising others in subsequent pleadings, frequently rewording and enumerating them differently each time. Some of the subparts to his claims have numerous subparts, often raised for the first time in the instant §2254 petition. It is possible that some of the claims raised either in petitioner's state or federal court proceedings have been inadvertently overlooked or incorrectly assessed. The Court would welcome clarification from the parties as to any such claims.

raised in the appeal of its denial to the WVSCA.[18]   While he again raises IAC claims against trial counsel in the instant federal petition, they are claims as to 11 *other* issues, 9 of which were never raised before, and 2 of which are related, but are different claims[19] (Claim 2(a) and Claim 2(h))) than what were raised in his first state habeas petition.  To further add to the confusion, he did not raise one of them on appeal of his first state habeas (Claim 2(a)), thus, even if it could be liberally construed as the same claim he is raising now, it is not exhausted for that reason as well. While it is true that petitioner was granted a stay and abeyance to exhaust his claims, and he did raise raise IAC claims in his second state habeas petition and its appeal, he did not raise them against *trial* counsel, only against his *original habeas* counsel.   Thus, **all of petitioner's §2254 IAC claims against *trial* counsel remain**, and are **not exhausted**, because he still has a potential remedy available in state court with regard to them.

- **Ground Two** (denial of the opportunity to present a defense of third party guilt) was raised on direct appeal (as #1), and raised (as #3) in petitioner's first state habeas and the appeal of the denial of the same (as # 3).  Accordingly, this claim is **exhausted**.

- **Ground Three** (trial court erred by denying petitioner's Motion for Acquittal because the state did not prove first degree murder beyond a reasonable doubt) was raised on direct appeal (as # 2, raising a different factual basis of only 5 ways in which the trial court erred).  However, it was not raised as a constitutional claim there, nor is it raised as one in his instant federal habeas petition.  Further, in his federal petition, in addition to the original 5 ways of alleged trial court error, he raises 5 additional points of alleged trial court error that were not raised in the claim on direct appeal, thus, here, he is relying on a different factual basis than that relied upon when he raised the claim before the WVSCA. Petitioner also raised the claim in his first state habeas petition (as #4), albeit with the same 10 bases he is raising here, but again, without stating a constitutional claim; however, he then failed to raise it on appeal to the WVSCA. He did not raise it in his second state habeas petition.  Therefore, this claim is **not exhausted**.

---

[18] Petitioner did not raise his first state habeas Claim 2(a) on appeal: (whether trial counsel was ineffective for failing to move for bifurcation of the trial, so that there would be a separate hearing on the issue of whether the jury would grant mercy).

[19]      Petitioner's first state habeas IAC Claim 2(h)(Counsel failed to adequately address the issue of admission into evidence of the two guns owned by petitioner) was raised in his federal habeas petition as IAC Claim 2(c)( "Counsel was deficient in arguing against [sic] the admissibility of the two guns alleged to [both] be and not to be the murder weapons . . . caus[ing] the jury to guess and speculate as to which gun could have or might have been the murder weapon[.]").

      Petitioner's first state habeas IAC Claim 2(a) (trial counsel was ineffective for failing to move for bifurcation of trial so that there would be a separate hearing on the issue of whether the jury would grant mercy) was raised in his federal habeas petition as Claim 1(k) (Counsel failed to properly advise and instruct petition on his right to file a motion to bifurcate the trial before trial commenced, preventing petitioner from being able to seek mercy, if the jury would grant mercy).

- **Ground Four** (violation of petitioner's due process, equal protection and rights to fair trial by the admission into evidence of petitioner's two guns, despite neither having been proven to be murder weapon) was raised on direct appeal (as #3), but without any allegation of violation of federal rights. Petitioner also raised it as such in his first state habeas petition (as # 5), but not in the appeal of its denial. He raised it again in his second state habeas and its appeal, but there, as a claim of IAC against habeas counsel for not alleging violations of his federal rights in connection with the admission of the guns into evidence. Thus, because this claim was raised as violation of a constitutional right for the first time in the instant petition, it is **not exhausted**.

- **Ground Five** (admission of gruesome photographs of victim's body into evidence violated petitioner's rights to a fair trial and due process) was raised as a different claim on direct appeal (#4), as a claim that the trial court erred in admitting the photos, not alleging that any federal constitutional right of petitioner was violated. The petition for appeal was refused by the WVSCA. Petitioner raised the same claim in the first state habeas petition (#6), again, merely as a claim that the trial court erred by admitting the photos, although he did not raise it in the appeal of its denial. It was then raised for the first time in his amended second state habeas petition as a violation of his federal rights, but raised there as yet a different claim: one of IAC on the part of petitioner's first habeas counsel for not alleging a violation of petitioner's federal right to a fair trial, due process, and a fundamentally fair sentencing hearing when the Circuit Court introduced the gruesome photos, and it was raised again as an IAC claim against first habeas counsel in the appeal of his second state habeas petition. Because petitioner did not raise the same claim he is raising here to the highest state court, this claim is **not exhausted;** petitioner still has a potential remedy available in state court with regard to this claim.

- **Ground Six** (State withheld exculpatory information by not granting petitioner's discovery request for Bill Sites' polygraph examiner's questions, answers and notes, in violation of West Virginia Rules and the fundamental requirements of <u>Brady v. Maryland</u> and <u>Napue v. Illinois</u>) was raised on direct appeal (as # 5), but merely as a claim that the trial court erred in not granting the defense request for the same; it was raised again in the same format in his first state habeas petition (as # 7), and its appeal (# 5). Petitioner also raised it in his second state habeas petition, but only as an IAC claim against original habeas counsel for not alleging violations of his federal rights in connection with the issue in his first habeas petition. Because petitioner did not raise the same claim to the highest state court that he is raising here, this claim is **not exhausted**. Therefore, petitioner still has a potential remedy available in state court with regard to this claim.

- **Ground Seven** (at trial, the court committed reversible error by permitting the State to introduce petitioner's initial verbal statement to police denying having seen or spoken to the murder victim on the day of the murder, and by not

instructing the jury to disregard it) was raised on direct appeal (as #6) as a purely state law claim; was raised again similarly in the first state habeas petition (as #8), but not in the appeal of that petition or in the second state habeas petition. Because petitioner has never raised this as a federal claim to the highest state court, this claim is **not exhausted**. Thus, petitioner still has a potential remedy available in state court with regard to this claim.

- **Ground Eight** (cumulative error) was never raised on direct appeal or in any state court and accordingly, is **not exhausted**. Therefore, petitioner still has a potential remedy available in state court with regard to this claim.

- **Ground Nine** (denial of right to automatic appeal in the WVSCA) was raised in petitioner's first state habeas petition, which was summarily denied; he then appealed that decision and his petition for appeal was denied**.** While technically he has raised this claim to the State's highest court, the claim is **not exhausted** and can never be exhausted, because there is no constitutional right to post-conviction review.

In <u>Rose v. Lundy</u>, 455 U.S. (1982), the United States Supreme Court held that a federal district court may not adjudicate mixed petitions and imposed a requirement of total exhaustion, implemented by dismissing mixed petitions without prejudice and allowing petitioners to return to state court to litigate the unexhausted claims. At the time the Supreme Court issued that decision, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") had not been enacted, and there was no statute of limitations on federal habeas corpus petitions.[20] Therefore, dismissal without prejudice did not preclude a petitioner from returning to federal court once his claims were exhausted in state court proceedings.

However, "[a]s the result of the interplay between AEDPA's 1-year statute of limitations and Lundy's dismissal requirement, petitioners who come to federal court with 'mixed' petitions, run the risk of forever losing their opportunity for any federal review of their unexhausted claims." <u>Rhines v. Weber</u>, 544 U.S. 269, 275 (2005). Accordingly, the Supreme Court has held that a federal district court may, under some circumstances, stay, rather than dismiss without

---

[20]Pursuant to AEDPA, a one-year limitation period within which to file a federal habeas corpus motion was established.

prejudice, a federal habeas petition containing both exhausted and unexhausted claims. Nonetheless, a stay and abeyance procedure, "if employed too frequently, has the potential to undermine [the] twin purposes" of the AEDPA.[21] Rhines, 544 U.S. at 277. Therefore, stay and abeyance procedures are only available in limited circumstances.[22] Id.

The procedure recognized by the court in Rhines allows the district court the option of staying a federal habeas petition and holding in abeyance to allow a petitioner to return to state court to exhaust his previously unexhausted claims. Once total exhaustion has been achieved, the stay is lifted and the petitioner may proceed in federal court. However, this procedure is only appropriate where an outright dismissal could jeopardize the timeliness of a petitioner's collateral attack in federal court. Thus, if a petitioner seeks a stay in order to exhaust claims pleaded in the original petition, then, he is required to allege facts showing (1) that "good cause" exists for his failure to exhaust the unexhausted claims; and (2) that the unexhausted claims are "potentially meritorious" on federal habeas corpus review. Rhines, 544 U.S. at 27-78.

Here, however, the Court has already given petitioner the opportunity for one stay and abeyance. The undersigned finds no grounds for the application of another stay and abeyance procedure in this case. First, despite this Court's permitting petitioner a stay and abeyance to exhaust the many unexhausted claim in his mixed petition, petitioner did not avail himself of the opportunity to present all of his unexhausted claims to the state courts. Second, the petitioner cannot show good cause for the failure to exhaust his claims in state court; indeed, he did not even attempt to offer any argument to rebut respondent's position on this point. Petitioner filed

---

[21] The twin purposes of AEPDA are to reduce delays in the execution of state and federal criminal sentences and to encourage petitioners to seek relief in state court in the first instance.

[22] Those circumstances include instances in which the petitioner has shown good cause for his failure to exhaust, that his unexhausted claims are potentially meritorious, and where there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.

two separate state habeas petitions and appealed both of them. Petitioner's numerous unexhausted claims were known to petitioner, or should have been, at the time those cases were filed. Thus, those claims should have been raised in one of the petitioner's state habeas petitions.[23]

Third, even if the petitioner could establish good cause for not raising his unexhausted claims in one of his prior petitions, granting another stay and abeyance would be moot: the statute of limitations for timely re-filing his federal habeas petition has long since expired.[24] As

---

[23] To the extent that the petitioner's ineffective assistance of counsel claims include a claim that counsel on his first state habeas petition was ineffective, that claim is not cognizable on federal habeas review and petitioner would not be permitted to proceed on that claim even if there was good cause for his failure to previously raise that issue in state court. See Pennsylvania v. Finley, 481 U.S. 551 (1987) (there is no Constitutional right to have appointed counsel in post conviction proceedings).

[24] In 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ["AEDPA"] was enacted, establishing a one-year limitation period within which to file any federal habeas corpus motion. 28 U.S.C. §2244(d). The limitation period shall run from the latest of:

    A) the date on which the judgment of conviction becomes final by the conclusion of direct review of the expiration of the time for seeking such review;

    B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Where a federal prisoner does not file a petition for writ of certiorari with the United States Supreme Court, the one year limitation begins to run when the time for filing a writ - 90 days - expires.

    In the present case, petitioner was convicted on January 12, 2006 and sentenced February 9, 2006. His direct appeal to the WVSCA was refused April 3, 2007. Although petitioner did not petition for a writ of *certiorari*, he had until July 3, 2007 to do so. He filed his first state habeas corpus petition on June 15, 2007, before his judgment became final. It was denied on November 25, 2008; he timely appealed the denial of his first habeas corpus petition to the WVSCA on May 4, 2009; it was refused June 3, 2009. He filed his instant federal habeas petition on July 22, 2009. The instant case was stayed to permit him to exhaust, and on March 23, 2010, he filed his second state habeas petition. It was denied on October 12, 2010 and petitioner appealed to the WVSCA on May 10, 2012. On March 12, 2013, the WVSCA issued its opinion on the appeal.

    Petitioner's judgment therefore became final on July 3, 2007. However, the one-year limitations period did not begin to run, because it was already tolled before the judgment became final by the filing of his first state habeas petition on June 15, 2007. See 28 U.S.C. § 2244(d)(2) [providing "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."]; Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). His limitations period remained tolled throughout the pendency of the first habeas petition until its denial was appealed and then refused review by the WVSCA on June 3, 2009. He filed his instant §2254 petition 42 days later, on July 22, 2009. Accordingly, the 1-year limitations period began to run after the WVSCA denied review of the appeal petition on the first state habeas petition on June 3, 2009, because at that point, "an application for state postconviction review no longer exist[ed] . . .[because an] application for state

25

previously established, the petitioner filed this case on July 22, 2009.[25] Because the time in which a federal habeas petition is pending does not toll the running of the statute of limitations under 28 U.S.C. § 2244(d)(2), see Duncan v. Walker, 533 U.S. 167 (2001), the one-year federal time limit has elapsed and, as noted by the respondent, he is now procedurally barred from returning to State court. He must either sever his unexhausted claims, or, in the absence of available State corrective process, he must demonstrate cause and prejudice for the default. Here, however, petitioner has not yet raised most of his federal claims before the state courts, thus, he cannot rely on the futility of doing so. Further, petitioner has made no attempt to do demonstrate cause and prejudice in his response.

Here, petitioner has failed in his burden to demonstrate that he has exhausted his state judicial remedies. Breard v. Pruett, *supra* at 619. Despite being given the opportunity to rebut the respondent's contention in its renewed motion to dismiss and motion for summary judgment, that petitioner still had not fully exhausted all of his claims, petitioner's response offered no explanation for his failure to do so. Although many of the claims raised in the instant petition are somewhat similar to claims raised below, that is insufficient, under Anderson v. Harless, *supra* at 6. "The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition." Breard v. Pruett, supra at 619.

In light of the fact that, pursuant to Rose v. Lundy, 455 U.S. 509 (1982), a federal district court may not adjudicate mixed petitions and the "AEDPA's 1-year statute of limitations and Lundy's dismissal requirement, petitioners who come to federal court with 'mixed' petitions, run

---

postconviction review is . . . not 'pending' after the state's post-conviction review is complete, and §2244(d)(2) does not toll the 1-year limitations period during the pendency of a petition for *certiorari.*" Lawrence v. Florida, 549 U.S. 327, 1082 - 83 (2007). Accordingly, the limitations period began to run, and by the time he filed his federal habeas petition on July 22, 2009, 42 days of the one-year period had elapsed; the remaining 323 days of the limitations period expired on June 4, 2010.

[25] See Dkt.# 1.

the risk of forever losing their opportunity for any federal review of their unexhausted claims."

Rhines v. Weber, 544 U.S. 269, 275 (2005). Consequently, that is the position petitioner is in, and he is advised that he has two options. He may elect to sever his unexhausted claims and seek review only of his one fully-exhausted claim, or, if he chooses to move forward with his mixed petition, the Court will be required to dismiss the entire case with prejudice.

## IV.  Recommendation

For the reasons previously set forth, and given the petitioner's *pro se* status, the undersigned feels compelled to make the following alternate recommendations:

1)  it is hereby recommended that the petition in this case be again construed as a "mixed petition" and that it be **DISMISSED with prejudice** from the active docket of this Court. In light of this recommendation, the undersigned further recommends that the Respondent's Motion for Summary Judgment and Renewed Motion to Dismiss (Dkt. 59) be **DENIED as moot**. In the alternative,

2)  in the event the petitioner objects to the construction of his petition as a mixed petition, and instead, seeks to proceed only on the exhausted claims, the undersigned hereby recommends that the Respondent's Motion for Summary Judgment and Renewed Motion to Dismiss (Dkt.# 59) be **GRANTED**.

**Within fourteen (14) days** after being served with a copy of this report and recommendation, **or by August 12, 2013**, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.** 28

U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide a copy of this Report and Recommendation electronically to Robert Goldberg, Assistant Attorney General, 812 Quarrier Street, 6th Floor, Charleston, WV 25305.

DATED: July 29, 2013.

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE